UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**JOYIT HARRIS**  Case No.

    Plaintiff,

v.

**SYNCHRONY BANK,**

    Defendant.
_____/

## COMPLAINT FOR DAMAGES WITH JURY DEMAND

1.    JOYIT HARRIS, ("Ms. Harris" or "Plaintiff") brings this action against SYNCHRONY BANK for violations of the Equal Credit Opportunity Act 15 U.S.C. §1691b *et. seq.* (hereinafter the "ECOA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA") and the Florida Consumer Collection Practices act, Florida Statute §559.72 *et. seq.* (hereinafter "FCCPA").

## PARTIES, JURISDICTION, AND VENUE

2.    At all times relevant to this Complaint. Ms. Harris was and is a resident of Palm Beach County, FL.

3.    This Court has supplemental jurisdiction to hear all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

4.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

5.    Defendant, Synchrony Bank, ("Synchrony" or "Defendant") is a national banking association with its principal place of business at 170 West Election Road, Suite 125, Draper Utah 84020.

6. Plaintiff is an "applicant" as defined by 15 U.S.C. §1691a(b) because she previously applied to Synchrony for an extension of credit and requested such credit to benefit herself.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Synchrony is a "creditor" as defined under the Florida Consumer Collection Practices Act, Fla. Stat. §559.55, et seq.

9. Synchrony reports credit information to the three national credit agencies commonly known as Equifax, Experian, and Transunion and is a "furnisher of information" as defined under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

## STATUTORY FRAMEWORK

### The ECOA

10. The ECOA initially required the Federal Reserve Board to promulgate regulations to enforce the Act. *See* 15 U.S.C. § 1691b (1974).

11. The Federal Reserve Board promulgated Regulation B, which defines an applicant as "any person who requests or who has received an extension of credit from a creditor," which includes "any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e).

12. Additionally, "the term "applicant" is one who requests credit to benefit himself." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1191 (11th Cir. 2019).

13. The ECOA defines an "adverse action" as a denial **or revocation of credit, a change in the terms of an existing credit arrangement**, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is

delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit. *See* 15 U.S.C. § 1691(d)(6)(emphasis added).

14. The ECOA and its regulations require a creditor to give the applicant a statement of specific reasons for the action taken. *See* 15 U.S.C. §1691(d).

15. The Official Staff Commentary to Reg. B requires that the reasons disclosed by the creditor for taking the adverse action must be accurate. *See* 12 C.F.R. § 202.9(b)(2)-2.

16. The ECOA is requires creditors to maintain records of credit transactions for 25 months following the date of the adverse action. 12 C.F.R. § 202.12(b)(1).

17. "Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." 15 U.S.C. § 1691e(a).

18. "Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a) . . ."15 U.S.C. § 1691e(b).

**The FCRA**

19. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

20. Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

21. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is

accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

22. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

23. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

24. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

25. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

26. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or

          iii.    any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

27. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

### The FCCPA

28. The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc* at 1192 (citing Fla. Stat. § 559.552).

29. The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

30. "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. §559.77(2).

31. Ms. Harris is a "consumer" as defined by Florida Statute §559.55(8) asserting claims against Synchrony as a "debt collector" within the meaning of Florida Statute §559.55(7) as set forth, *infra.*

32. As a consumer, Ms. Harris has a private right of action against Dovemuehle pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

### FACTUAL ALLEGATIONS

33. Ms. Harris first opened a PayPal credit Mastercard in July of 2019 ending in 6923

(the "Account") for which Synchrony is the lender.

34. On or about April 8, 2020, Ms. Harris logged in to her online account, through PayPal, to make her regular monthly payment when she noticed her balance was about $2,500 more than what she owed, and her credit limit had suddenly been increased from $5,000 to $7,200.

35. Other than Ms. Harris, her son is an authorized user on the account, so she asked him about the charges which are more fully described below. Both Ms. Harris and her son had physical cards tied to the Account as authorized users.

36. Ms. Harris was not aware of the credit limit increase because she was not notified online or through the mail.

37. The fraudulent charges Ms. Harris noticed were tied to purchases at a Walmart for several hundred dollars each in April of 2020.

38. Ms. Harris called PayPal when she saw the fraudulent charges on her online statement.

39. The representative who spoke with Ms. Harris opened a fraud claim and stated it would take 30-days for an investigation to be completed, but Ms. Harris should continue to make her required monthly payments, which she did.

40. On or about April 30, 2020, Ms. Harris received a "Fraud Investigation Form" which she completed and returned as part of the investigation. A redacted copy of the "Fraud Investigation Form" as it was sent by Ms. Harris is attached as Composite Exhibit "A."

41. On or about May 10, 2020, Ms. Harris called to speak to the Fraud Department about the investigation; she was told her claim was still being reviewed and to call back.

42. On or about May 26, 2020, Ms. Harris called the fraud department and spoke to a representative named George to whom she expressed concern over the outcome of the fraud

investigation and that she may be laid off soon because her employer was closing departments in response to COVID-19 restrictions.

43. During the discussion, Ms. Harris was placed on a brief hold by George who returned and informed her that if she paid $815.15 as a settlement the account ("Settlement Amount") would be considered paid in full, however the fraud claim was still open and under investigation. After several discussions, George informed Ms. Harris she would have to pay the Settlement Amount, which would be followed by a letter in the mail confirming the Account was considered paid in full. Ms. Harris would need time to gather the funds before paying the Settlement Amount, so she did not agree to anything on that date.

44. On or about June 1, 2020, Ms. Harris called PayPal and spoke to a representative named Keith who confirmed a note in their system stating the Settlement Amount was offered. Since Ms. Harris was preparing to make a payment she asked if the call was being recorded, which Keith confirmed, so she paid the Settlement Amount and was given a confirmation number: #1121-22030. At the end of the call, Keith stated Ms. Harris would receive a letter in the mail confirming her payment and settlement of the account.

45. More than one month passed without a letter being received, so Ms. Harris called on or about July 21, 2020 and spoke with a representative named Heather in the Fraud Department who stated she saw notes in the system regarding the Settlement Amount and assured Ms. Harris that a letter would be sent.

46. Ms. Harris had yet to receive a letter confirming the Settlement Amount, so she called PayPal again on or about August 20, 2020, and spoke with a representative named Heather who confirmed there Ms. Harris' payment and again confirmed a letter would be sent.

47. On or about October 1, 2020, Ms. Harris called PayPal to inquire about the letter

she had been promised for months, only to be informed her account was placed for collection with Rausch Sturm, and she needed to contact them for more information.

48. On or about July 16, 2021, Ms. Harris received a letter from Rausch Sturm claiming Synchrony was owed $4,581. 74 in connection with the Account. A redacted copy of the Rausch Sturm letter is attached as Exhibit "B."

49. Ms. Harris called Rausch Sturm and spoke to Drew Honea who stated the account had just been transferred to their office. During the call with Mr. Honea, Ms. Harris explained the related fraudulent activity which led to the Settlement Amount.

50. Mr. Honea stated the Settlement Amount should not have been collected while their was a fraud claim under investigation and he would contact PayPal.

51. Ms. Harris was given a file number #4290278 by Mr. Honea, so her account could be located quicker when she called back. Despite several calls back to Mr. Honea, Ms. Harris was unable to resolve her issue with PayPal, so she hired counsel to demand a copy of the letter she was repeatedly promised but had never received.

52. Ms. Harris' retained counsel contacted Rausch Sturm but did not receive a response. Eventually, Ms. Harris was no longer represented by counsel, so she began calling Mr. Honea again to try and resolve her issues.

53. On or about July 20, 2021, Ms. Harris spoke with Mr. Honea who informed her the Account had been returned to PayPal.

54. On or about August 31, 2021, Ms. Harris called PayPal who referred her to Synchrony.

55. On or about December 8, 2021, Ms. Harris called Synchrony and spoke with a representative named Sam to whom she recounted her saga regarding the initial fraud claim, the

Settlement Amount, the Account being referred to collections, and then being returned to PayPal.

56. In between her consistent contacts with Synchrony, Ms. Harris noticed her Trans Union credit reports showed the Account as a charge-off with a $4,581 balance, so she decided to dispute it.

57. On or about December 21, 2021, Ms. Harris received reinvestigation results for her Trans Union dispute, which verified the reporting of the Account as a charge-off.

58. A redacted copy of Trans Union's December 21, 2021 reinvestigation results is attached as Exhibit "C."

59. On or about December 23, 2021, Ms. Harris received a letter from Synchrony stating the Account was "paid in full for less than the full balance."

60. In June or July of 2022, Ms. Harris received two letters from Synchrony stating her Care Credit and JC Penney accounts are being closed because she was having difficulty paying those accounts. However, when Ms. Harris received the letters from Synchrony she had a $0 balance on her CareCredit and JC Penney Account.

61. Based on information and belief, Synchrony was maintaining information regarding the Account as a charge-off to wrongfully justify the closing of her CareCredit and JC Penney accounts.

62. At the time the Care Credit account was closed, Ms. Harris had access to a $4,500 limit which she used for health and wellness treatments. Ms. Harris' available payment history shows she has never missed a payment on her CareCredit account, which is also financed by Synchrony.

63. At the time the JC Penney account was closed, Ms. Harris had access to a $6,000 limit which she used for personal, family, and household purposes. Ms. Harris' available payment

history shows she has never missed a payment on her JC Penney account, which is also financed by Synchrony.

64. To supplement the loss of these two credit accounts, Ms. Harris applied for another credit card with Barclays Bank Delaware on or about July 13, 2022, for which she was approved with a $3,000 limit. Based on information and belief, one or more of Ms. Harris' credit reports were viewed in the application process, which included the inaccurate charge-off information regarding the Account, as well as her two recently closed lines of credit with Synchrony (CareCredit and JC Penney).

65. After months of communicating with Synchrony only to have other accounts closed Ms. Harris sent written disputes of the Account being charged-off to the CRAs on or about August 9, 2022.

66. A redacted copy of the August 9, 2022, disputes are attached as Composite Exhibit "D."

67. On or about September 7, 2022, Ms. Harris also called each one of the CRAs to reiterate the information in her written disputes.

68. Trans Union responded on September 16, 2022, by stating the Account was previously a charge-off at $4.581 but was settled for less than the full balance, and a current $0 balance. A redacted copy of Trans Union's September 2022 reinvestigation results are attached as part of Composite Exhibit "E."

69. Experian responded on or about September 28, 2022, via email stating the reporting was verified as accurate, but information unrelated to the dispute was changed. According to Ms. Harris' most recently available Experian report, the $4,581 is reported as charged-off, but the balance is not updated. A redacted copy of Experian's September 2022 reinvestigation results are

attached as part of Composite Exhibit "E."

70. Ms. Harris has not seen an updated credit report from Equifax but based on information and belief the Account is still being reported as charged-off; the stated balance is unknown.

71. In November of 2022, Ms. Harris applied for and was approved for a student loan at 4.99% interest, which is subsidized by the U.S. Department of Education. Based on information and belief, one or more of Ms. Harris' credit reports were viewed in the application process, which included the inaccurate charge-off information regarding the Account, as well as her two recently closed lines of credit with Synchrony (CareCredit and JC Penney).

## COUNT I – VIOLATIONS OF 15 U.S.C. §1691 AGAINST SYNCHRONY

72. Plaintiff incorporates by reference her allegations in paragraphs 1 – 6, 9 – 18, and 33 -71 as if fully set forth herein.

73. Synchrony is a "creditor" as defined by the ECOA because it regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

74. Synchrony took "adverse action" on Plaintiff when it closed her CareCredit and JC Penney accounts, which resulted in a $10,500 loss of available credit.

75. Synchrony violated the ECOA by failing to provide Plaintiff with the reasons, or accurate reasons, for taking adverse action on her two credit accounts.

76. Because of Synchrony's ECOA violations, Plaintiff seeks statutory penalties and punitive damages of $10,000, together with reasonable attorney fees and costs.

77. Because of Synchrony's ECOA violations, Plaintiff has been damaged.

78.     Plaintiff's damages include emotional distress associated with inaccurate adverse actions taken against her existing accounts with Synchrony, loss of credit and the opportunity to benefit from credit, a reduction in her credit score as a result of her existing credit lines being closed, and time spent dealing with Synchrony's ECOA violations.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Synchrony in the form of:

a. actual damages,

b. $10,000 in statutory penalties and punitive damages pursuant to 15 U.S.C. § 1691e(b);

c. Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e(d);

d. and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1681-s2(b) AGAINST SYNCHRONY FOR DISPUTES TO TRANS UNION

79.     Plaintiff incorporates by reference the allegation is paragraphs 1 – 5, 7, 9, 19 – 27, 33 – 46, 56 – 69, and 71 as if fully set forth herein.

80.     Synchrony is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

81.     Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's first dispute in December 2021 when it failed to review all relevant information forwarded by Trans Union and/or information which it already possessed.

82.     Similarly, Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's subsequent written dispute in August 2022 when it failed to review all relevant information forwarded by Trans Union and/or information which it already possessed.

83. Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's subsequent telephone dispute in September 2022 when it failed to review all relevant information forwarded by Trans Union and/or information which it already possessed.

84. Additionally, Synchrony violated 15 U.S.C. §1681s-2(b) by failing to accurately respond to any of Plaintiff's dispute(s) forwarded by Trans Union concerning the account Synchrony reported.

85. As a result of Synchrony's violations of the FCRA, Plaintiff has been damaged.

86. Plaintiff's damages include emotional distress associated with the inaccurate reporting of a charge-off that was the result of fraudulent charges, adverse actions, credit being granted at increased rates as the result of the inaccurate information being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, a reduction in her credit score as a result of the charge-off reporting, and the costs associated with disputes.

87. Synchrony negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

88. Additionally, Synchrony committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

89. Synchrony's violations were willful in it possessed or had direct access to information that would have prompted a correction of Plaintiff's disputed information rather than reporting a charged-off balance when that same balance was the result of fraudulent charges.

90. Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Synchrony in the form of actual damages, statutory damages, punitive damages, Attorneys' fees,

litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST SYNCHRONY FOR DISPUTES TO EXPERIAN

91. Plaintiff incorporates by reference the allegations in paragraphs 1 – 5, 7, 9, 19 – 27, 33 – 46, 64 – 67, 67, and 71 as if fully stated herein.

92. Synchrony is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

93. Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's written dispute in August 2022 when it failed to review all relevant information forwarded by Experian and/or information which it already possessed.

94. Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's subsequent telephone dispute in September 2022 when it failed to review all relevant information forwarded by Experian and/or information which it already possessed.

95. Additionally, Synchrony violated 15 U.S.C. §1681s-2(b) by failing to accurately respond to any of Plaintiff's dispute(s) forwarded by Experian concerning the account Synchrony reported.

96. As a result of Synchrony's violations of the FCRA, Plaintiff has been damaged.

97. Plaintiff's damages include emotional distress associated with the inaccurate reporting of a charge-off that was the result of fraudulent charges, adverse actions, credit being granted at increased rates as the result of the inaccurate information being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, a reduction in her credit score as a result of the charge-off reporting, time spent dealing with credit report disputes, and the costs associated with disputes.

98. Synchrony negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

99. Additionally, Synchrony committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

100. Synchrony's violations were willful in it possessed or had direct access to information that would have prompted a correction of Plaintiff's disputed information rather than reporting a charged-off balance when that same balance was the result of fraudulent charges.

101. Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Synchrony in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST SYNCHRONY FOR DISPUTES TO EQUIFAX

102. Plaintiff incorporates by reference the allegations in paragraphs 1 – 5, 7, 9, 19 – 27, 33 – 46, 64 – 67, 69, and 71 as if fully stated herein.

103. Synchrony is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

104. Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's written dispute in August 2022 when it failed to review all relevant information forwarded by Equifax and/or information which it already possessed.

105. Synchrony violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's subsequent telephone dispute in September 2022 when it failed to review all

relevant information forwarded by Equifax and/or information which it already possessed.

106. Additionally, Synchrony violated 15 U.S.C. §1681s-2(b) by failing to accurately respond to any of Plaintiff's dispute(s) forwarded by Equifax concerning the account Synchrony reported.

107. As a result of Synchrony's violations of the FCRA, Plaintiff has been damaged.

108. Plaintiff's damages include emotional distress associated with the inaccurate reporting of a charge-off that was the result of fraudulent charges, adverse actions, credit being granted at increased rates as the result of the inaccurate information being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, a reduction in her credit score as a result of the charge-off reporting, and the costs associated with disputes.

109. Synchrony negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

110. Additionally, Synchrony committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

111. Synchrony's violations were willful in it possessed or had direct access to information that would have prompted a correction of Plaintiff's disputed information rather than reporting a charged-off balance when that same balance was the result of fraudulent charges.

112. Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Synchrony in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT V – VIOLATIONS OF FLA. STAT. 559.72(5)**
**AGAINST SYNCHRONY FOR DISCLOSURES TO RAUSCH STURM**

113. Plaintiff incorporates by reference the allegations in paragraphs 1 – 5, 8, and 28 – 55 as if fully stated herein.

114. At all times relevant to this action, Synchrony is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

115. The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

116. Damages in the form of reputation being affected are the "class of injury where damages are difficult to prove and at the same time provide a penalty to dissuade parties . . . from engaging in collection practices which may have been heretofore tolerated industry wide." See *Laughlin v. Household Bank*, 969 So. 2d 509, 513 (Fla. 1st DCA. 2007) (quoting *Harris v. Beneficial Finance Company of Jacksonville*, 338 So.2d 196, 200 (Fla. 1976)). Accordingly, Plaintiff "is not required to prove actual damages, but only a violation of one of the prohibited practices in the FCCPA." Id. "As discussed above, by enacting section 559.77, the Legislature intended to provide statutory damages in an area where the amount of damages are difficult to calculate." Id. at 514.

117. Synchrony disclosed false information affecting Plaintiff's reputation to Rausch Sturm: that Plaintiff owed $4,581 to Synchrony.

118. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining

the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

119. As a result of Synchrony's FCCPA violations, Plaintiff suffered damages including time spent addressing Defendant's illegal collection practices, damage to her reputation for credit worthiness, and misrepresentation of an amount to a third party.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Synchrony for: actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

## COUNT VI - VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST SYNCHRONY

120. Plaintiff restates and incorporates all the statements and allegations contained in paragraphs 1 – 5, 8, and 28 - 59 as if fully stated herein.

121. At all times relevant to this action, Synchrony is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

122. Defendant Synchrony violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate, or asserting the existence of some other legal right when Defendant knew that right did not exist.

123. Rausch Sturm communicated with Plaintiff on behalf of Synchrony in the July 15, 2021, letter which stated $4,581 was owed to Synchrony.

124. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000,

together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2).

125. As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant' illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, against Defendant for: actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff JOYIT HARRIS hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**
830 North Federal Highway
Lake Worth, FL 33460
Telephone: 561-655-3925
Fax: 844-921-1022
Direct: 561-296-9109

*/s/ Kevin Rajabalee*
Kevin Rajabalee, Esq.
FBN: 119948
Email: kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
Email: eiman@sharminlaw.com
*Counsel for Plaintiff*